**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PACIFIC CAPITAL BANK, N.A., d/b/a SANTA
BARBARA BANK & TRUST,

Plaintiff,

v.

ANDREW M. CUOMO, in his official capacity as
Attorney General of the State of New York; and
JAMIE WOODWARD, in her official capacity as
Acting Commissioner of the New York State
Department of Taxation and Finance,

Defendants.

Civil Action No. 09 CIV 10037

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR A PRELIMINARY INJUNCTION

Andrew B. Kratenstein (AK-3910)
Michael J. Dillon (MD-4553)
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173
Tel: (212) 547-5400
Email: akratenstein@mwe.com
        mdillon@mwe.com

Of Counsel:
Stephen M. Ryan*
David Ransom
MCDERMOTT WILL & EMERY LLP
600 13th Street, NW
Washington, DC 20005
Tel: (202) 756-8000
Email: sryan@mwe.com
        dransom@mwe.com

\* Motion for admission *pro hac vice* forthcoming

*Attorneys for Plaintiff*
*Pacific Capital Bank, N.A.,*
*d/b/a Santa Barbara Bank & Trust*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 4

I.    PACIFIC AND ITS RAL LENDING OPERATION ............................................ 4

II.   TAX LAW SECTION 32 AND GBL SECTIONS 371-372 ................................ 8

    A.    Tax Law Section 32 ................................................................................ 8

    B.    GBL Sections 371-372 ............................................................................ 9

LEGAL STANDARD ..................................................................................................... 9

ARGUMENT .................................................................................................................. 10

I.    PACIFIC HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE
    MERITS ............................................................................................................... 10

    A.    Direct Regulation of Pacific's Banking Business Is Preempted By Federal
        Law ........................................................................................................ 10

    B.    Indirect Regulation of Pacific's Banking Business Through Its
        Indispensable Loan Agents Is Also Preempted By Federal Law ......................... 12

    C.    Tax Law Section 32 and GBL Sections 371-372 Impermissibly Infringe
        Upon Pacific's Banking Business, And Are Thus Preempted ............................. 15

II.   PACIFIC WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN
    INJUNCTION ........................................................................................................ 19

    A.    Pacific Will Suffer Irreparable Harm Under The Supremacy Clause If The
        State Is Not Enjoined ............................................................................... 19

    B.    Pacific Will Suffer An Incalculable Loss of Goodwill And Market Share If
        The State Is Not Enjoined ......................................................................... 21

    C.    The State's Eleventh Amendment Immunity Prevents Pacific From
        Obtaining Damages From the State ............................................................. 22

# TABLE OF CONTENTS
(continued)

**Page**

III.     THE BALANCE OF EQUITIES FAVORS PACIFIC.................................................... 24

IV.     AN INJUNCTION SERVES THE PUBLIC INTEREST ............................................ 25

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Aguayo v. U.S. Bank,*
  No. 08-CV-2139 W(LSP), 2009 WL 3149607 (S.D. Cal. Sept. 24, 2009) .................16

*Bank One, Utah, N.A. v. Guttau,*
  190 F.3d 844 (8th Cir. 1999) .......................................................................20, 25

*Barnett Bank v. Nelson,*
  517 U.S. 25 (1996)......................................................................................11

*Coastal Distributing, LLC v. Town of Babylon,*
  No. 06-0981-CV, 06-0989-CV, 2007 WL. 450180 (2d Cir. Feb. 6, 2007) ................21

*Cuomo v. Clearing House Ass'n L.L.C.,*
  129 S. Ct. 2710 (2009)................................................................................12

*Franklin Nat'l Bank v. New York,*
  347 U.S. 373 (1954).....................................................................................12

*Frew v. Hawkins,*
  540 U.S. 431 (2004)....................................................................................24

*Haley v. Pataki,*
  883 F. Supp. 816 (N.D.N.Y. 1995), *vacated as moot,* 60 F. 3d 137 (2d Cir.
  1995) .................................................................................................23, 24

*John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.,*
  588 F.2d 24 (2d Cir. 1978)...........................................................................21

*La. Public Serv. Comm'n v. FCC,*
  476 U.S. 355 (1986)....................................................................................12

*MedImmune, Inc. v. Genetech, Inc.,*
  549 U.S. 118, 127 S. Ct. 764 (2007)...............................................................19

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992)..................................................................................19

*N.Y. State Restaurant Ass'n v. N.Y. City Bd. of Health,*
    545 F. Supp. 2d 363 (S.D.N.Y. 2008)................................................19, 20

*Pacific Capital Bank, N.A. v. State of Connecticut,*
    542 F.3d 341 (2d Cir. 2008)...............................................................13, 14

*Pacific Capital Bank, N.A. v. Milgram,*
    Civil Action No. 08-0223, 2008 WL 700180 (D.N.J. Mar. 13, 2008)........14

*Pankos Diner Corp. v. Nassau County Legislature,*
    321 F. Supp. 2d 520 (E.D.N.Y. 2003) .......................................................23

*Platte v. Thomas Township,*
    504 F. Supp. 2d 227 (E.D. Mich. 2007)....................................................24

*Quern v. Jordan,*
    440 U.S. 332 (1979)..................................................................................24

*Register.com, Inc. v. Verio, Inc.,*
    356 F.3d 393 (2d Cir. 2004)......................................................................21

*SPGGC, LLC v. Ayotte,*
    488 F.3d 525 (1st Cir. 2007)......................................................................14

*SPGGC, LLC v. Blumenthal,*
    505 F.3d 183 (2d Cir. 2007) .....................................................................15

*State Farm Bank, FSB v. Reardon,*
    539 F.3d 336 (6th Cir. 2008) ....................................................................14

*State Farm Bank, FSB v. District of Columbia,*
    Civ. Action No. 05-611 (EGS), 2009 WL 2245242 (D.D.C. July 28, 2009) .............14

*Ticor Title Ins. Co. v. Cohen,*
    173 F.3d 63 (2d Cir. 1999).........................................................................22

*Trans World Airlines v. Mattox (TWA),*
    897 F.2d 773 (5th Cir. 1990) .....................................................................20

## TABLE OF AUTHORITIES
(continued)

**Page**

*United States v. New York,*
   780 F.2d 92 (2d Cir. 1983)..................................................................22, 23

*Watters v. Wachovia,*
   550 U.S. 1 (2007)..........................................................................11, 12

*Winter v. Natural Res. Def. Council, Inc.,*
   129 S. Ct. 365 (2008) ......................................................................9, 10

*Villas at Parkside Partners v. City of Farmers Branch,*
   No. 3:06-CV-2371-L, 2007 WL 1498763 (N.D. Tex. May 21, 2007) .................19, 20

*Zino Davidoff SA v. CVS Corp.,*
   571 F.3d 238 (2d Cir. 2009) ................................................................10


## FEDERAL STATUTES AND REGULATIONS

12 C.F.R. § 7.1004(a)..........................................................................17

12 C.F.R. § 7.4000..............................................................................10

12 C.F.R. § 7.4000(a)(1).......................................................................10

12 C.F.R. §§ 7.4001(b) ........................................................................11

12 C.F.R. § 7.4008(d)(2).................................................................*passim*

12 C.F.R. §7.4008(e)...........................................................................17

12 C.F.R. §7.4009(a)...........................................................................11

12 U.S.C. § 21...................................................................................2

12 U.S.C. § 24 (Seventh) ................................................................*passim*

12 U.S.C. § 85 ..............................................................................11, 18

12 U.S.C. § 93 .................................................................................10

12 U.S.C. § 481 ................................................................................10

12 U.S.C. § 484...............................................................................10, 11

**TABLE OF AUTHORITIES**
(continued)

**Page**

**STATE STATUTES**

N.Y. Tax Law § 32 ........................................................................................ *passim*

N.Y. G.B.L. § 371............................................................................................ *passim*

N.Y. G.B.L. § 372 ........................................................................................... *passim*

S. 59-B/A. 159-B, Part VV, §§ 2-7
    2009 N.Y. ALS 59 .....................................................................................8

## PRELIMINARY STATEMENT

This action challenges the constitutionality of New York State laws that restrict the lending activities of a national bank. Pacific Capital Bank, N.A., a national bank doing business in the State of New York as Santa Barbara Bank & Trust ("Pacific"), offers and makes refund anticipation loans ("RALs"). A RAL is a loan that provides a customer with the expected amount of his or her tax refund, substantially before the customer would otherwise receive that refund from the Internal Revenue Service ("IRS"). For several years, Pacific has issued, and continues to issue, RALs to customers in the State of New York.

In what has become a recurring pattern of behavior in several states, New York State has enacted broad – and unconstitutional – statutes that obstruct or impair how national banks such as Pacific may offer RALs in the State. Notwithstanding that state attempts to regulate the lending practices of national banks have been repeatedly preempted by federal law, these statutes nonetheless seek to achieve the same goal indirectly by targeting the tax preparation firms whose assistance is indispensable to the national banks. By limiting or conditioning how tax preparers may facilitate the national banks' offering of RALs in New York State, however, the State[1] impermissibly ignores both federal law and well established legal precedent that establishes a simple truth: just as a state may not directly regulate a national bank's "business of banking," it also cannot do so indirectly.

Accordingly, Pacific seeks a preliminary injunction on or before January 15, 2010, to prevent the State from acting under Section 32 of the New York Tax Law (hereinafter, "Tax Law Section 32," attached to the Complaint as Exhibit 1), as well as amended Sections 371 and 372

---

[1] Pacific brings this action against Andrew M. Cuomo, in his official capacity as Attorney General of New York State, and Jamie Woodward, in her official capacity as Acting Commissioner of the New York State Department of Finance (collectively referred to herein with New York State as the "State").

of the New York General Business Law (hereinafter, "GBL Sections 371 and 372," attached to the Complaint as Exhibit 2) in a manner that will undermine the National Bank Act of 1864, 12 U.S.C. § 21 *et seq.* ("NBA"), and will usurp the role of federal banking regulators, pending resolution of this matter.

Pacific has a substantial likelihood of success on the merits. Within the last two years, both the Second Circuit (affirming the District of Connecticut) and a federal district court in New Jersey enjoined similar state attempts to circumvent the NBA and the role of federal banking regulators through attacks on the tax preparer facilitators of national banks. These decisions, which are consistent with decisions from other jurisdictions, were rooted in a plain reading of the NBA and the relevant, binding case law that expressly prohibits states from interfering with national banks' federally granted banking powers. Because national banks exercise those powers by offering RALs through tax preparation businesses, those courts found that the NBA preempted the states' attempts to limit or condition the national bank's powers to distribute RALs through tax preparers.

Indeed, it is the Office of the Comptroller of the Currency ("OCC"), and not any state actor, that has the power under federal law to regulate a national bank's offering of RALs and all other RAL-related activities. Further detailing the NBA's protection of national banks' right to contract, lend, and collect on debt, OCC rules specifically provide that national banks may offer RALs to customers free from state limitation on those loans, including any interference with *terms of credit, disclosure and advertising (including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents), or disbursements and*

*repayments.* 12 C.F.R. § 7.4008(d)(2) (emphasis added).  Yet the New York statutes impose

limitations on precisely these aspects of Pacific's banking business.

Although these statutes purport to regulate only a "facilitator" of RALs, the statutory

definition of a "facilitator" in both Section 32 and GBL 371 is so broad that it reaches not only

tax preparers, but the RAL lenders themselves.  Such a broad definition subjects national banks

such as Pacific to the conditions and restrictions imposed by the State on RAL-related activities,

in direct contravention of federal law.

Tax Law Section 32 also impermissibly seeks to regulate the national banks indirectly, by

purporting to impose conditions or restrictions on tax preparers, who are the banks'

indispensable facilitators of RALs.  These limitations infringe upon Pacific's ability to do

business in New York State by restricting Pacific's:  (a) ability to collect RAL-related debts (see

Tax Law Section 32(f)(1)(F)); (b) finance charges to customers and the method of compensation

to its tax preparer agents for facilitating RALs (see Tax Law Section 32(f)(1)(C)); (c) freedom to

contract with customers of RALs (see Tax Law Section 32(f)(1)(D); and (d) ability to take a

security interest in certain property (see Tax Law Section 32(f)(1)(E)).  Because federal law

precludes such state regulation of national banks, whether directly or indirectly through their

"agents," Pacific is substantially likely to prevail on the merits.

Pacific will be irreparably harmed if the enforcement of the challenged provisions of the

statutes is not expeditiously enjoined.  Pacific will suffer irreparable harm if (and when) State

action under these statutes violates the Supremacy Clause of the Constitution, and undermines

the exclusive *federal* authority to regulate the business of banking by Pacific through its

facilitators.  Moreover, in the absence of a preliminary injunction, Pacific will suffer a loss of

goodwill, customer relationships, market share, and incalculable revenue, particularly because

the mere existence of the subject statutes will force Pacific's facilitators, the tax preparers, to limit the extent to which they may advertise or facilitate RALs, or to cease doing so altogether. Finally, Pacific's injuries will be irreparable because the State is immune from suits for monetary damages under the Eleventh Amendment.

For all of the foregoing reasons, the balance of equities also strongly favors Pacific. It also serves the public interest to enjoin a preempted law. Accordingly, this Court should issue the requested preliminary injunction.

**STATEMENT OF FACTS**

**I.    PACIFIC AND ITS RAL LENDING OPERATION**

Pacific is a national bank organized and existing under the NBA. Pacific's main office and principal place of business is in California. (Declaration of R. Turner ("Turner Decl.") ¶ 3.) Pacific offers RALs to consumers in the State of New York. (*Id.*) RALs can be a time-saving and money-saving option for many individuals. (*Id.* ¶¶ 11-13.) The loans are repaid to the bank once the consumer's tax return is processed and approved, and are subject to any IRS-related offsets. (*Id.* ¶¶ 14-15.) Any additional funds received from the IRS that exceed the RAL amount belong to the taxpayer, and are provided to the taxpayer when they are received. (*Id.* ¶ 15)

Tax preparation businesses play an indispensable role in Pacific's RAL lending operations. (*Id.* ¶ 8.) Pacific has no offices and maintains no "branch system" in New York as it does in California. (*Id.* ¶ 3.) Pacific also does not prepare federal income tax returns for customers and is statutorily prohibited from doing so. (*Id.* ¶ 7.) By entering into contracts with tax preparers to offer RALs at tax preparers' locations, Pacific receives exposure to a large number of potential customers that might not otherwise consider taking out a loan at that time.

4

(*Id.* ¶ 8.)[2] Moreover, Pacific receives this marketing opportunity at the very point taxpayers decide whether to either purchase a RAL, or receive their tax refund through another means. (*Id.*) If Pacific could not make its products available to the customers at tax preparation firms, Pacific's ability to extend RALs would be substantially diminished, if not virtually eliminated. (*Id.*)

In addition to providing marketing and point-of-sale access to potential RAL customers, tax preparers perform several important functions for Pacific. For example, they obtain a debt indicator for the taxpayer that indicates whether the taxpayer owes any debt to the IRS, which would make the taxpayer ineligible for a RAL. (*Id.* ¶ 9.)

Pacific makes no substantive decisions in the customer's tax return preparation process. (*Id.* ¶ 7.) This responsibility remains solely with the customer and the tax preparation service. (*Id.*) The tax preparation business transmits the customer's RAL application to Pacific only after the customer's anticipated tax refund is determined by the tax preparation business. (*Id.* ¶ 12.) Pacific alone then determines whether to issue the loan. (*Id.*)

RALs are loans offered by lenders, including Pacific and other banks, during the tax filing season each year. RALs provide a consumer with loan proceeds in an amount up to the consumer's anticipated tax refund, minus the tax preparation fees, a finance charge for the RAL loan, and a fee for setting up the account where the consumer's actual tax refund is deposited directly by the IRS. (*Id.* ¶ 4.). For the upcoming tax season (January 2010 – April 2010), Pacific's finance charge on RAL loans will be 1.16 percent of the loan amount. (*Id.* ¶ 5.) Thus, on a $3,000 loan, the finance charge would be $34.80. The maximum RAL loan is $7,500. (*Id.*)

---

[2] Pacific offers RALs in New York State through the tax preparation businesses or affiliates of H&R Block, Jackson Hewitt and Liberty Tax Services, all of which are subject to the statutes at issue in this action. (Turner Decl. ¶ 8.)

A tax preparer's fees for preparing the customer's tax return are deducted from the RAL proceeds. (*Id.* ¶ 6.) Accordingly, bank customers only seek RALs at the time and place they file their annual tax returns. (*Id.*) In this fashion, a consumer can obtain a loan in the amount of his or her anticipated tax refund, pay the fees of his or her tax preparer from the proceeds of the RAL, and receive the remaining loan proceeds often within 24 hours of filing a tax return. (*Id.*)

A taxpayer can receive his or her RAL in several different ways. (*Id.* ¶ 13.) Pacific's RAL customers may request and receive a paper check, issued and signed by Pacific, which is provided to the customer at a tax preparation service center. (*Id.*) Pacific can distribute RAL proceeds through direct deposit, payroll cards, and cash cards. (*Id.*) Pacific can also create a temporary bank account for those without a bank account in order to facilitate the loan applicant receiving the cash more quickly. (*Id.*) When a customer chooses this option, the customer is charged a standard one-time account setup charge of $32 for this service, which is not a RAL finance charge under the federal Truth in Lending Act. (*Id.*) Pacific takes a security interest in these bank accounts. (*Id.*)

Pacific's agreement with the customer requires that the RAL be repaid when the IRS makes the customer's tax refund available, as well as a provision in which the customer instructs the IRS to send the refund directly to Pacific for that purpose. (*Id.* ¶ 14.) The agreement also provides that, if the amount of the refund is less than the payment due, the customer must pay the difference. (*Id.*) As required by federal law, the customer is fully apprised of all fees and charges prior to agreeing to accept the RAL. (*Id.*)

Because RALs are loans, they involve risks for Pacific and other RAL lenders. (*Id.* ¶ 18.) First, there is a risk that the customer's tax refund may be reduced or not paid at all by the IRS due to some fact unknown to Pacific at the time of approving and making the RAL, such as

6

fraudulent activity. (*Id.*) Second, there is a risk that the refund may be delayed beyond the average time because of unanticipated reviews of the customer's tax return by the IRS. (*Id.*) Finally, although Pacific does not prepare the customer's tax return, Pacific alone bears the risk of not being able to recover the full amount of the RAL should errors arise out of the tax preparation process from its tax preparation business facilitator. (*Id.*)

Like any other lending institution, Pacific seeks to recover debts that are owed to it. (*Id.* ¶ 19.) To recover RAL loan losses, Pacific seeks to collect its debt in one of two ways. First, it recovers a RAL debt owed by a consumer when that same consumer applies for another RAL with Pacific in a subsequent year. (*Id.*) Second, Pacific engages in cross-collection agreements with other RAL lenders, whereby those lenders recover Pacific's debt when a consumer (who is indebted to Pacific for a RAL) seeks another RAL from a lender other than Pacific in a subsequent year. (*Id.*) In both instances, consumers are notified *prior to applying for a second RAL* that previous RAL debts are subject to direct collection or cross-collection agreements. (*Id.*) Thus, consumers may choose not to apply for a second RAL, in which case their tax refund would not be used to offset the debt for the first RAL. (*Id.*)

RALs provide many benefits to consumers and the public at large. For example, RALs help those taxpayers in need of funds quickly to receive their loan proceeds in a day or two, rather than wait days or several weeks to receive their refund. (*Id.* ¶ 11.) Additionally, millions of Americans do not have a bank account, and are therefore foreclosed from taking advantage of the speedier delivery options for their tax returns offered by the IRS, such as direct deposit. RALs enable these taxpayers to access the equivalent loan proceeds quickly. (*Id.*) For many consumers, RALs are superior to what is offered by non-bank lending outlets, such as check cashing vendors or payday lenders. (*Id.*)

## II.    TAX LAW SECTION 32 AND GBL SECTIONS 371-372

Earlier this year, the New York State legislature passed a budget bill containing a new Tax Law Section 32 and amended GBL Sections 371-372. Each statute purports to regulate tax preparers and "facilitators" of RALs, effective at the start of the 2009 tax season (January 2010 - April 2010).[3]

### A.    Tax Law Section 32

Tax Law Section 32 seeks to regulate tax preparers and "facilitators" of RALs issued by national banks such as Pacific in several ways.

First, the statute broadly defines a "facilitator" as "a person who individually or in conjunction with another person: (a) solicits the execution of, processes, receives, or accepts an application for a refund anticipation loan or refund anticipation check; (b) serves or collects upon a refund anticipation loan or refund anticipation check; or (c) in any other manner facilitates the making of a refund anticipation loan or a refund anticipation check."

Second, Tax Law Section 32(f)(1)(F) mandates that tax return preparers and "facilitators" of RALs shall not "[d]irectly or indirectly, individually or in conjunction or cooperation with another person, engage in the collection of an outstanding or delinquent refund anticipation loan, for any creditor or assignee."

Third, Tax Law Section 32(f)(1)(C) requires that tax return preparers and facilitators "shall not directly or indirectly arrange for a third party to charge any interest, fee or charge related to a refund anticipation loan or refund anticipation check."

---

[3] Any potential enforcement of Tax Law Section 32 and GBL Sections 371-372 is triggered by the start of the 2009 tax season, notwithstanding any earlier "effective date" of the laws. *See* 2009 N.Y. ALS 59 (Part VV, §§ 2-7 of S. 59-B/A. 159-B).

Fourth, Tax Law Section 32(f)(1)(D) demands that tax return preparers and facilitators shall not "[i]nclude any of the following provisions in any documents provided or signed to obtain a refund anticipation loan or refund anticipation check, including the loan application or agreement: (i) a hold harmless clause; (ii) a confession of judgment clause; (iii) a waiver of the right to a jury trial; (iv) any assignment of or order for payment of wages or other compensation for services; (v) a waiver of any provision of the Taxpayer Bill of Rights . . . ; or (vi) a waiver of the right to injunctive, declaratory, other equitable relief, or relief on a classwide basis."

Fifth, Tax Law Section 32(f)(1)(E) provides that no tax return preparer or facilitator may "take or arrange for a creditor to take a security interest in any property interest of the taxpayer other than the proceeds of the tax refund to secure payment of a refund anticipation loan."

### B.    GBL Sections 371-372

GBL Sections 371-372 also attempt to regulate tax preparers and "facilitators" of RALs issued by national banks such as Pacific. GBL Section 371 contains the identical definition of a "facilitator" as Tax Law Section 32. GBL Section 372 in turn mandates numerous written and oral disclosures that must be given by the "facilitator" to a potential RAL customer as part of the marketing and facilitation process.

## LEGAL STANDARD

A party is entitled to a preliminary injunction if the party establishes "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public

9

interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008).[4]  As

demonstrated below, Pacific has more than satisfied each element of this test.

## ARGUMENT

**I.    PACIFIC HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE
       MERITS**

Pacific has a substantial likelihood of success on the merits of its claim that the

challenged provisions of the statutes at issue are preempted by the NBA and OCC regulations.  It

is beyond dispute that the NBA prohibits states from attempting to regulate the banking activities

of national banks, including their lending and collection efforts with respect to RALs.  The State

also cannot condition, limit or eliminate the availability of RALs by indirect attempts to regulate

Pacific through restricting its tax preparer facilitators.

**A.    Direct Regulation of Pacific's Banking Business Is Preempted By Federal
       Law**

As a national bank, Pacific's banking activities are governed by the NBA, which is

enforced by the OCC.  12 U.S.C. § 484; 12 C.F.R. § 7.4000.  The OCC has regulatory,

supervisory, examination and enforcement authority with respect to a national bank's compliance

with federal and state laws – oversight that extends to RALs offered by national banks.  *See* 12

U.S.C. §§ 24 (Seventh), 93(a), 481.  However, this responsibility is not generally shared with the

states: the OCC has established that "[s]tate officials may not [, among other things,] . . .

conduct[] examinations, . . . or prosecut[e] enforcement actions [against national banks], except

in limited circumstances authorized by federal law."  12 C.F.R. § 7.4000(a)(1).

---

[4] After *Winter* was decided by the Supreme Court, the Second Circuit has continued to apply the preliminary
injunction standard that it applied pre-*Winter*, holding that a party seeking a preliminary injunction must show
"(1) the likelihood of irreparable harm in the absence of an injunction; and (2) either a (a) likelihood of success on
the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a
balance of the hardships tipping decidedly toward the party requesting the preliminary relief." *Zino Davidoff SA v.
CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009).  As demonstrated below, whatever standard this Court applies, Pacific
is clearly entitled to the injunctive relief it requests.

Indeed, Congress and the OCC have authorized national banks, including Pacific, to exercise all powers "as shall be deemed necessary to carry on the business of banking," including all powers "incidental" to lending. 12 U.S.C. §§ 24 (Seventh), 85; 12 C.F.R. §§ 7.4001(b), 7.4009(a). Such powers include an ability to "make non-real estate loans *without regard to state law limitations concerning* . . .(i) registration; . . . (iv) the terms of credit; . . . (v) disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents; (vi) security property, . . . [and] (ix) disbursements and repayments . . . ." 12 C.F.R. § 7.4008(d)(2) (emphasis added). In other words, federal law governs a national bank's ability to issue RALs.

The NBA is designed "to protect from state hindrance a national bank's engagement in the 'business of banking' whether conducted by the bank itself or by an operating subsidiary, empowered to do only what the bank itself could do." *Watters v. Wachovia*, 550 U.S. 1, 20 (2007). For example, to prevent inconsistent regulation of the national banks by the states, the NBA provides that the federal government, not state governments, have visitorial powers over the banks. *See* 12 U.S.C. § 484(a) ("No national bank shall be subject to any visitorial powers except as authorized by Federal law, vested in the courts of justice or such as shall be, or have been exercised or directed by Congress . . ."). Unless a federal banking statute specifically provides otherwise, state regulation of banking is only permissible if it "does not prevent or significantly interfere with the national bank's exercise of its powers." *Barnett Bank v. Nelson*, 517 U.S. 25, 33 (1996).

It is thus well-settled that New York State cannot substantially interfere with the ability of national banks to advertise, make, or collect on loans in New York. State laws that seek to

regulate how national banks conduct their "business of banking" are preempted by the NBA and OCC regulations.[5] *See, e.g., Cuomo v. Clearing House Ass'n L.L.C.*, 129 S. Ct. 2710, 2721 (2009) (holding that state was precluded under NBA and OCC regulations from engaging in "any form of administrative oversight that allows a sovereign to inspect books and records [of a national bank] on demand, even if the process is mediated by a court through prerogative writs or similar means.");[6] *Franklin Nat'l Bank v. New York*, 347 U.S. 373, 378-79 (1954) (holding that New York statute restricting national banks' ability to advertise was preempted by the NBA). Accordingly, it is clear that the State cannot directly regulate Pacific's RAL lending and advertising practices.

**B.     Indirect Regulation of Pacific's Banking Business Through Its Indispensable Loan Agents Is Also Preempted By Federal Law**

The NBA also preempts state attempts to interfere with Pacific's banking business by purporting to regulate tax preparers, who are the bank's indispensable "facilitators" of its RALs. The Supreme Court has "never held that the preemptive reach of the NBA extends only to a national bank itself. Rather, in analyzing whether state law hampers the federally permitted activities of a national bank, we have focused on the exercise of a national bank's powers, not on its corporate structure." *Watters*, 550 U.S. at 18. Indeed, the NBA itself expressly provides that national banks shall have the power "[t]o exercise by its board of directors or duly authorized

---

[5] Regulations of a federal agency acting within the scope of its congressionally delegated authority also preempt contradictory state laws. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986).

[6] The Supreme Court in *Clearing House* vacated the portion of the injunction that "prohibits the Attorney General from bringing judicial enforcement actions" to enforce state laws of "general applicability," such as anti-discrimination statutes. 129 S. Ct. at 2717, 2722. By contrast, Pacific is not challenging the validity or enforcement of a state statute of "general applicability" that is being enforced against the bank. Pacific challenges the constitutionality of a state statute that directly or indirectly, through tax preparer facilitators, regulates RAL lending activities. Thus, *Clearing House*'s holding that states may judicially enforce their "general laws" against national banks has no applicability here. *Id.* at 2720.

officers *or agents*, subject to law, *all such incidental powers* as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh ) (emphasis added).

Notably, the Second Circuit recently enjoined a similar indirect attempt by the State of Connecticut to regulate a national bank. The statute at issue set a ceiling on the interest rates for RALs and provided for a fine and treble damages against any facilitator of RALs if the RAL issued was above that ceiling. *Pacific Capital Bank, N.A. v. State of Connecticut*, 542 F.3d 341 (2d Cir. 2008). In affirming the district court's conclusion that the NBA preempted enforcement of the statute against tax preparer facilitators of RALs on behalf of national banks, the Second Circuit held that state attempts to "forb[id] national banks to exercise their incidental powers through agents would thus plainly be preempted [under 12 U.S.C. § 24 (Seventh)]. We think it equally plain that a state statute cannot be allowed to avoid preemption by imposing such a prohibition indirectly." *Id.* at 352-53. Thus, "a state statute that subjects non-bank entities to punishment for acting as agents for national banks" in the exercise of activities authorized by the NBA cannot "escape preemption on the theory that, on its face, it regulates only non-bank entities." *Id.* at 353. The court reasoned, "[p]lainly, losing the assistance of facilitators would pose a significant obstacle to the offering of RALs by national banks such as Pacific." *Id.* Because Pacific has no branches in Connecticut and offers its RALs solely through tax preparers (just as it does in New York), enforcement of the statute against facilitators "would cause injury to Pacific by increasing its costs and/or constricting its access to potential RAL customers." *Id.* at 351. Therefore, the court concluded that the state's attack on tax preparers facilitating RALs on behalf of such national banks "would significantly, albeit indirectly, curtail authorized national bank activities and would thereby conflict with federal law." *Id.* at 354.

13

Likewise, the U.S. District Court for the District of New Jersey recently concluded that a state usury statute did not apply to a tax preparer who was facilitating RAL products – notwithstanding the state's protests that it was only regulating the non-bank agent's ability to facilitate usurious loans and not imposing any obligation on the bank itself.  In so holding, the court concluded that the statute "as applied to third party tax preparers also significantly interferes with [the bank's] ability to exercise Congressionally granted powers" and "stands as an obstacle to allowing [the bank] to charge the interest rates permitted under the NBA." *Pacific Capital Bank, N.A. v. Milgram*, Civil Action No. 08-0223, 2008 WL 700180, at *7-8 (D.N.J. Mar. 13, 2008).

The *Connecticut* and *New Jersey* opinions are consistent with decisions from other jurisdictions that have addressed similar preemption claims under federal banking laws.  *See, e.g.*, *SPGGC, LLC v. Ayotte*, 488 F.3d 525 (1st Cir. 2007); *State Farm Bank, FSB v. Reardon*, 539 F.3d 336 (6th Cir. 2008); *State Farm Bank, FSB v. District of Columbia*, Civ. Action No. 05-611 (EGS), 2009 WL 2245242 (D.D.C. July 28, 2009).  For example, in *Ayotte*, the First Circuit held that a state cannot significantly interfere with a national bank's ability to sell gift cards through an agent.  488 F.3d at 533.  In that case, the state instituted an enforcement action against the owner of shopping malls, alleging that the owner violated state law by selling bank cards – issued by national banks – that contained expiration dates and prohibitive administrative fees.  *Id.* at 528.  The First Circuit found that where the bank's agent was simply facilitating the business of the bank, and was incidental to the transaction between the bank and the customer, "it would be contrary to the language and intent of the National Bank Act to allow states to avoid