# Memorandum – Part 2

preemption of their statutes simply by enacting laws that prohibited non-bank firms from providing national banks with the resources to carry out their banking activities." *Id.* at 533.[7]

### C. Tax Law Section 32 and GBL Sections 371-372 Impermissibly Infringe Upon Pacific's Banking Business, And Are Thus Preempted

Notwithstanding that the State may not regulate Pacific's "business of banking" either directly or indirectly through its agents, the New York statutes at issue seek to do precisely that.

*First*, both Tax Law Section 32(a)(6) and GBL Section 371 employ an impermissibly broad definition of "facilitator" that, as drafted, appears to *directly* subject national banks that offer RALs in New York to those state laws, and thereby infringe upon the banks' ability to offer RALs within the State. Each statute defines a "facilitator" as "a person who individually or in conjunction with another person: (i) solicits the execution of, processes, receives, or accepts an application for a refund anticipation loan or refund anticipation check, (ii) serves or collects upon a refund anticipation loan or refund anticipation check; or (iii) in any other manner facilitates the making of a refund anticipation loan or a refund anticipation check." N.Y. Tax Law § 32(a)(6); GBL § 371(a). This definition does not distinguish between the national banks who make the RALs and the professional tax preparation businesses who facilitate these RALs on the banks' behalf. Pacific certainly could satisfy all three of the categories presented, as it offers RALs "individually or in conjunction with another person."

Yet as noted above, as a national bank, Pacific has authority under the NBA to receive deposits, to loan money, and to exercise "all such incidental powers as shall be deemed necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh). In providing a RAL, Pacific acts to "loan money," and its offering of RALs *and all related activities* are part of

---

[7] The Second Circuit dealt with a gift-card preemption case in *SPGGC, LLC v. Blumenthal*, 505 F.3d 183 (2d Cir. 2007), ultimately concluding that certain aspects of Connecticut's gift-card law might be preempted by federal law because they purported to limit the fees a national bank could charge.

15

Pacific's "incidental powers" to engage in such "business of banking." *Id.* It is the purview of the OCC to exercise oversight of such practices – not the State. Yet the New York laws at issue both condition and interfere with Pacific's RAL-lending activities (explained more fully below), and implicitly usurp the power of the OCC. Such regulation is facially improper under the NBA.

*Second*, even if the statute is construed narrowly so that national banks such as Pacific do not fall within the statutory definition of a "facilitator," the statutes at issue plainly seek to regulate national banks indirectly through their indispensable facilitators of RALs – the tax preparers. Tax Law Section 32 (f)(1)(F) forbids "facilitators" from "[d]irectly or indirectly, individually or in conjunction or cooperation with another person, engag[ing] in the collection of an outstanding or delinquent refund anticipation loan, for any creditor or assignee." The statute thus attempts to foreclose tax preparers from facilitating the collection of debt on RALs, running contrary to the NBA, which establishes that national banks and their agents may also exercise "***all such incidental powers*** as shall be necessary to carry on the business of banking," including "***negotiating promissory notes, drafts, bills of exchange, and other evidences of debt . . .***" 12 U.S.C. § 24 (Seventh) (emphasis added).

Tax Law Section 32 (f)(1)(F) also ignores OCC regulations that specifically provide that national banks and their agents are permitted to "make non-real estate loans ***without regard to state law limitations concerning . . . disbursement and repayment.***" 12 C.F.R. §7.4008 (d)(2)(ix) (emphasis added). Notably, the "power to collect debts and repossess collateral property under default is inseparable from the power to make or purchase loans, and is arguably an element of participation and dealing in loans." *Aguayo v. U.S. Bank*, No. 08-CV-2139 W(LSP), 2009 WL 3149607, at *6 (S.D. Cal. Sept. 24, 2009). Accordingly, the State has improperly truncated Pacific's ability to collect its own outstanding debt, and also restricted Pacific's ability to engage

16

in "cross-collection" agreements with other national banks. As described in the Turner Declaration, if Pacific is not permitted to collect its own debt or engage in cross-collection, the bank will be required to raise prices, reduce loan amounts, approve fewer loans, restrict the number of sites where the bank offers RALs, or stop doing business in New York State. (Turner Decl. ¶ 21.)

*Third*, Tax Law Section 32(f)(1)(C) provides that tax return preparers or facilitators "shall not directly or indirectly arrange for a third party to charge any interest, fee or charge related to a refund anticipation loan or refund anticipation check." However, OCC regulations specifically provide that a national bank may "use the services of, *and compensate* persons not employed by, the bank for originating loans." 12 C.F.R. § 7.1004(a) (emphasis added). Tax Law Section 32(f)(1)(C) thus directly and impermissibly infringes upon the financial relationship between national banks and their necessary facilitators of RALs, the tax preparers, and compromises how Pacific may compensate its tax preparer facilitators. This subsection would also preclude the tax preparer, as a facilitator, from arranging a RAL in which the bank charges interest or a finance charge, in direct contravention of the OCC regulation preempting state laws regarding "terms of credit." 12 C.F.R. § 7.4008(d)(2)(iv).

*Fourth*, Tax Law Section 32(f)(1)(D) purports to bar a tax return preparer or facilitator from including certain clauses and waivers in its RAL contract with a borrower. However, OCC regulations provide that "state laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks *to the extent that they only incidentally affect* the exercise of national banks' non-real estate lending powers: (i) contracts; . . . [and] (iv) rights to collect debts." 12 C.F.R. § 7.4008(e) (emphasis added). OCC regulations also preempt state laws concerning the "terms of credit" and the "specific

17

statements, information, or other content to be included in . . . credit contracts, or other credit-related documents." 12 C.F.R. § 7.4008(d)(2)(iv)-(v). Forbidding national banks from including "hold harmless" and other such clauses in contracts does not "incidentally" affect the banks' non-real estate lending powers; rather, it materially alters the terms on which national banks can offer RALs and the content of credit documents by preventing those banks from including clauses designed to limit the banks' risk under RAL contracts.

*Fifth*, Tax Law Section 32(f)(1)(E) provides that no tax return preparer or facilitator may "take or arrange for a creditor to take a security interest in any property interest of the taxpayer other than the proceeds of the tax refund to secure payment of a refund anticipation loan." This provision impermissibly prevents banks from protecting themselves by contracting to take a security interest in any temporary bank account created by the banks for customers who are without a bank account. Indeed, OCC regulations specifically preempt state law limitations on "security property." 12 C.F.R. § 7.4008(d)(vi). Restricting Pacific's ability to take a security interest in the temporary bank accounts that Pacific establishes would effectively end the RAL program in New York. (Turner Decl. ¶ 25.) As such, Tax Law Section 32(f)(1)(E) directly infringes upon Pacific's "business of banking." 12 U.S.C. §§ 24 (Seventh), 85.

In short, the challenged statutory provisions detailed above compromise Pacific's ability to conduct the "business of banking" in New York, and are incompatible with both well-established federal law, and the purview of the proper authority for such matters, the OCC. What the State cannot do directly, it cannot do indirectly. Therefore, Pacific will likely succeed on the merits.

18

## II. PACIFIC WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION

The State will cause Pacific at least three forms of irreparable harm as a result of its continued enforcement action. First, Pacific will suffer irreparable harm from any enforcement of a preempted state law. Second, such enforcement threatens Pacific in the form of very substantial, but incalculable lost revenues, goodwill, market share, and business opportunities. Third, Pacific will be foreclosed from recouping any money damages from the State as a result of its unlawful action, as the State is immune from such claims under the Eleventh Amendment.

### A. Pacific Will Suffer Irreparable Harm Under The Supremacy Clause If The State Is Not Enjoined

Pacific will suffer irreparable harm to its federal rights absent a preliminary injunction against the State, foreclosing any enforcement action based upon the statutes at issue. As demonstrated above, the NBA preempts the challenged statutes. If allowed to stand unqualified, the statutes (and any State action thereon) would violate the Supremacy Clause, causing irreparable injury.[8]

A party suffers irreparable harm from the enforcement of a preempted law. *See N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 545 F. Supp. 2d 363, 368 (S.D.N.Y. 2008) (holding that plaintiff would suffer irreparable injury under the Supremacy Clause if the state's enforcement was not stayed pending appeal); *Villas at Parkside Partners v. City of Farmers Branch*, No. 3:06-CV-2371-L, 2007 WL 1498763, at *9 (N.D. Tex. May 21, 2007). Allowing a state to enforce such a law "would cause irreparable injury by depriving the [moving party] of a

---

[8] The statutes at issue present an imminent threat of harm to Pacific, compelling this motion. "[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing a suit to challenge the basis of the threat – for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 772 (2007); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382, (1992) (In suits where a plaintiff intends the action as a "'first strike' to prevent a State from acting, it is the prospect of the imminent state action which supplies the necessary irreparable injury.").

19

federally created right to have only one regulator in matters" governed by federal law. *Trans World Airlines v. Mattox (TWA)*, 897 F.2d 773, 784 (5th Cir. 1990) (affirming the issuance of a preliminary injunction). In such an instance, the grant of an injunction is in the public interest as determined by Congress and will cause no injury to the state. *See, e.g., Bank One, Utah, N.A. v. Guttau*, 190 F.3d 844, 847-48 (8th Cir. 1999) (holding that if state law is preempted and will cause irreparable harm, "the question of harm to the State and the matter of the public interest drop from the case, for [the moving party] will be entitled to injunctive relief no matter what the harm to the State, and the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law"). Even if a violation of the Supremacy Clause does not constitute irreparable harm *per se*, when there is a strong showing of success on the merits of the moving party's preemption claim, little or no additional showing with respect to irreparable injury is necessary. *See N.Y. State Rest. Ass'n*, 545 F. Supp. 2d at 368 (S.D.N.Y. 2008).

Here, Pacific has established that the NBA preempts the State's attempt to regulate national banks and their indispensable facilitators of RALs, the tax preparers. Congress has provided for exclusive federal regulation of the business of banking by national banks. The State's laws limiting Pacific's indispensable facilitator of RALs is ultimately an action against the bank itself, and violates the Supremacy Clause. Accordingly, any State action upon these statutes will cause irreparable harm to Pacific. Therefore, the preliminary injunction must be granted.

20

### B.   Pacific Will Suffer An Incalculable Loss of Goodwill And Market Share If The State Is Not Enjoined

In addition to the irreparable harm caused by the State's violation of the Supremacy Clause, if the State and its officers are not enjoined, Pacific's power to loan money through RALs in New York during the 2009 tax season and beyond will be substantially compromised, thereby causing irreparable harm to Pacific's goodwill, reputation, and business opportunities. "Irreparable harm may be found where damages are difficult to establish and measure, such as where (as here) a party will otherwise lose customer relationships that account for an indeterminate amount of business over years." *Coastal Distrib., LLC v. Town of Babylon*, No. 06-0981-CV, 06-0989-CV, 2007 WL 450180, at *2 (2d Cir. Feb. 6, 2007) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)); *see also Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999). In addition, the loss of goodwill can constitute irreparable injury, such as where the party seeking the injunction would lose the ability to sell an entire line of business and "may incur injury to its goodwill and reputation as a dependable distributor which offers a full line of goods." *John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc.*, 588 F.2d 24, 29 (2d Cir. 1978) (citation and internal quotations omitted). In particular, the potential loss of a party's ability to serve as a distributor can establish irreparable harm. *See id.*

Pacific will suffer irreparable harm absent the requested injunction. The statutes at issue are antithetical to Pacific's RAL-related practices in New York. As detailed above, such practices depend on its indispensable facilitators, the tax preparers. The statutes at issue seek to regulate these necessary vehicles for the ultimate sale of the national banks' RALs, by attempting to block, limit or condition their marketing of RALs. This is tantamount to regulation of the national banks themselves, and is an impermissible end run around the NBA.

The cost to Pacific will be immediate, profound, and in several respects difficult to establish or measure. Pacific will be damaged both with respect to its current and potential future customers for RALs. (Turner Decl. ¶¶ 21, 23-25.) As in *Ticor* and its progeny, there is no way to calculate the damages that Pacific will suffer through the loss of its relationships with former or future clients that "would produce an indeterminate amount of business in the years to come." *Ticor*, 173 F.3d at 69.

Absent the requested relief from this Court by the start of the 2009 tax season (or soon thereafter), the potential enforcement of the statutes at issue will likely force Pacific to cease offering RALs in New York State altogether. (Turner Decl. ¶¶ 25-26.) Accordingly, the circumstances are exigent, and in need of prompt resolution by this Court by January 15, 2010.

### C. The State's Eleventh Amendment Immunity Prevents Pacific From Obtaining Damages From the State

Unless a preliminary injunction is granted, Pacific will be irreparably harmed because it cannot later recover damages from the State under the Eleventh Amendment immunity. A party seeking a preliminary injunction establishes irreparable harm if it will suffer damages – even pecuniary damages – absent the issuance of the injunction where the party cannot recover such damages in a later federal action due to the defendant's Eleventh Amendment immunity.

For example, in *United States v. New York*, the Second Circuit affirmed a preliminary injunction even though the plaintiff's threatened losses were only pecuniary. The plaintiff could not recover the damages it would sustain as the State had Eleventh Amendment immunity. 708 F.2d 92, 93 (2d Cir. 1983). The court rejected the State's argument that the plaintiff could sue the State for damages in the New York Court of Claims, holding that "in deciding whether a federal plaintiff has an available remedy at law that would make injunctive relief unavailable, federal courts may consider only the available *federal* legal remedies." *Id.* The court also

22

clarified that the district court did not ease the necessary showing of irreparable harm but instead "can only be said to have required an absolute showing of irreparability here because [the plaintiff's] federal damages against New York are constitutionally foreclosed." *Id.* at 94.

Similarly, in *Pankos Diner Corp. v. Nassau County Legislature*, the court granted plaintiff-restaurant owners a preliminary injunction against a state government action notwithstanding the fact that the harm alleged was a monetary injury that usually would be improper grounds for an injunction. 321 F. Supp. 2d 520, 524 (E.D.N.Y. 2003). The court held that the plaintiffs' threatened injury established irreparable harm because plaintiffs would be unable to recover a judgment for the injuries due to the defendant's Eleventh Amendment immunity. *Id.* (citing *United States v. New York*, 708 F.2d at 93).

In *Haley v. Pataki*, the court granted plaintiffs' motion for preliminary injunction even though plaintiffs provided speculative evidence that they would suffer financial harm. The court reasoned that plaintiffs could not later recover any losses because the defendant had Eleventh Amendment immunity. 883 F. Supp. 816, 828 (N.D.N.Y. 1995), *vacated as moot*, 60 F.3d 137 (2d Cir. 1995). The plaintiffs, legislative employees, sought a preliminary injunction against the governor after he threatened to refuse to pay the employees if the legislature did not pass a budget by a certain date. *Id.* at 820. The plaintiffs claimed that they would suffer monetary harm from the Governor's action, including the inability to pay bills and rent on time and to cover the healthcare costs for themselves and their dependants. *Id.* at 823-24. The court considered plaintiffs' claims to be speculative and insufficient to show irreparable harm, but held that plaintiffs established "another form of irreparable harm . . . because should Governor Pataki choose not to later reimburse the legislative employees for their current work, the employees

23

would have no recourse in federal court due to the Eleventh Amendment bar on suits for retroactive monetary damages against the states." *Id.* at 824 (citations omitted).[9]

Here, Pacific will suffer irreparable injury if the State is not enjoined because Pacific will be constitutionally foreclosed from later obtaining relief from the State. As discussed above, Pacific will endure injury to its goodwill, reputation, and business opportunities, and the resulting damages cannot be reasonably calculated. But even if such damages could be reasonably calculated (which they cannot), Pacific's injury would be irreparable because the State enjoys Eleventh Amendment immunity from suit in federal court. Therefore, Pacific has demonstrated that it will be harmed and that such harm is irreparable due to the State's Eleventh Amendment immunity.

## III.   THE BALANCE OF EQUITIES FAVORS PACIFIC

The equities tip decidedly in Pacific's favor. As detailed above, Pacific faces both the loss of its federally mandated rights, and an incalculable loss of revenue, goodwill, market share, and business opportunity. To compound this harm, Pacific will be foreclosed from a monetary remedy, as the State is immune from a suit for pecuniary damages.

Conversely, the provisions of the State laws at issue are antithetical to well-established federal law, and ignore recent Second Circuit authority *that speaks directly to the present circumstances*. Indeed, *by the very language of the statutes at issue*, the State is attempting to limit or condition tax preparers and "facilitators" in their facilitation of RAL products offered by the national banks. As explained above, this is material and direct regulation of the national

---

[9] *See also Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (stating that the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law but does not allow federal courts to award retrospective relief such as money damages); *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (same); *Platte v. Thomas Township*, 504 F. Supp. 2d 227, 247 (E.D. Mich. 2007) (stating "there is no adequate remedy at law for individuals suing a state in federal court because the Eleventh Amendment bars the award of damages").

banks, which is not the purview of the State or any state actor. Accordingly, the State should be enjoined from enforcing the challenged provisions of Tax Law Section 32 and GBL Sections 371-72 against Pacific and its RAL facilitators.

## IV.    AN INJUNCTION SERVES THE PUBLIC INTEREST

Finally, the grant of the requested injunction serves the public interest. The public interest is served by enjoining the unconstitutional enforcement of state law. *Guttau*, 190 F.3d at 847-48. As discussed above, the challenged statutory provisions contradict and undermine express federal law. An injunction would ensure that the proper federal agency – the OCC – retains its generally exclusive authority to regulate national banks such as Pacific.

## CONCLUSION

Federal law preempts any State attempts to regulate RALs – both directly and indirectly. The challenged sections of the statutes at issue interfere with national banks' RAL lending activities in several material ways. Pacific will be irreparably harmed so long as those provisions can be enforced, the balance of the equities favor Pacific, and the public interest would be served if the enforcement of the challenged statutory provisions is enjoined. Pacific respectfully requests that the Court grant Pacific's motion for a preliminary injunction.

December 9, 2009

Respectfully submitted,

/s/ Andrew B. Kratenstein
_____
Andrew B. Kratenstein (AK-3910)
Michael J. Dillon (MD-4553)
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
(212) 547-5400

Of Counsel:
Stephen M. Ryan*
David Ransom
McDERMOTT WILL & EMERY LLP
600 13th Street, NW
Washington, DC 20005

*Motion for admission *pro hac vice* forthcoming

*Attorneys for Plaintiff Pacific Capital Bank, N.A., d/b/a Santa Barbara Bank & Trust*